CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

March 23, 2020

LETTER TO THE PARTIES

RE: *Adrienne M. v. Commissioner, Social Security Administration*
Civil No. DLB-18-3627

Dear Plaintiff and Counsel:

On November 27, 2018, Plaintiff Adrienne M., who was represented by counsel at the time but now appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. ECF No. 1. I have considered Plaintiff's August 15, 2019 letter to the Court, ECF No. 16 ("Pl.'s Letter"), the parties' cross motions for summary judgment, ECF No. 20 ("Pl.'s Mot."), ECF No. 21 ("Def.'s Mot."), and Plaintiff's response, ECF No. 23 ("Pl.'s Resp."). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed her claim for benefits on October 18, 2016, alleging a disability onset date of June 6, 2014. Administrative Transcript ("Tr.") 145. Plaintiff's date last insured ("DLI") was June 30, 2015, so she had to establish disability on or before June 30, 2015 to be entitled to Disability Insurance Benefits.[1] Tr. 14-15. Her claim was denied initially and on reconsideration. Tr. 98-101, 103-05. An Administrative Law Judge ("ALJ") held a hearing on July 10, 2018 at which Plaintiff was not represented by counsel. Tr. 30-72. Following that hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 13-23. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "left ankle fracture; ankle sprains; osteopenia; tibial tendonitis; Achilles tendonitis; plantar fasciitis; and left knee

---

[1] In her motion for summary judgment, Plaintiff contests the ALJ's stated application date. Pl.'s Mot. 1 ("initial filing was on December 23, 2015"). It appears that Plaintiff is referring to a prior disability claim. *See* Tr. 74 (showing a "Closed" filing on July 1, 2016). The record shows an application date of October 18, 2016. Tr. 145. In any event, the ALJ correctly adjudicated the relevant time period from June 6, 2014 to June 30, 2015. Tr. 13-23.

chondromalacia patellae." Tr. 16. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC"), through June 30, 2015, her date last insured, to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She could stand and/or walk for 2 hours and sit for 8 hours in an 8-hour workday. She could never push and/or pull with her left lower extremity. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could never climb ladders, ropes, and scaffolds.

Tr. 17. After considering the testimony of a vocational expert ("VE"), the ALJ determined that, through her date last insured, Plaintiff could not perform her past relevant work of sales assistant or realtor, but she could perform jobs existing in significant numbers in the national economy. Tr. 20-22. Accordingly, the ALJ determined that Plaintiff was not disabled from June 6, 2014, her alleged onset date, through June 30, 2015, her date last insured. Tr. 22.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons set forth below, the ALJ applied the correct legal standards and the ALJ's conclusions are supported by substantial evidence.

<u>ALJ found in Plaintiff's favor at step one</u>

The ALJ proceeded in accordance with applicable law, using the appropriate sequential evaluation. At step one, the ALJ found in Plaintiff's favor that she had not engaged in substantial gainful activity since her application date. Tr. 15. Plaintiff contends that, by making this finding, the ALJ "agreed" that her injuries rendered her disabled. Pl.'s Resp. 4-5 ("Since June 6, 2014 injuries, I proved my consistent medical work restrictions, over 20 medical diagnosis/injuries, major depression, anxiety, agoraphobia have all aided in preventing me from any type of gainful work as agreed by ALJ."); *id.* at 12 ("lack of gainful employment from Life-Long disabilities have proven no gainful employment since injuries and loss of two (2) careers Sales and Realtor – ALJ agreed."). A step-one finding that a claimant did not have substantial gainful activity merely allows the process to move forward; it is not a finding of disability. *See* 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, [the SSA] will consider your work activity . . . If you are doing substantial gainful activity, [the SSA] will find that you are not disabled.").

<u>ALJ's step-two finding was supported by substantial evidence</u>

At step two, the ALJ considered the severity of each of the impairments that Plaintiff claimed prevented her from working. *See* Tr. 16; 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. Basic work activities include "walking, standing, sitting, lifting,

pushing, reaching, carrying, or handling;" "seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522. A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

The ALJ determined that Plaintiff's left wrist contusion was not a severe impairment because "treatment records indicate[d] that her wrist began to improve in August 2014," and "[t]he evidence fail[ed] to demonstrate that this impairment caused significant limitation in the claimant's abilities to perform work-related functions." Tr. 16. This determination was supported by substantial record evidence. The ALJ further found that the following impairments were not medically determinable impairments during the relevant time frame: "trochanteric bursitis, neuralgia of the ankles and feet, shin splints, metatarsalgia, tarsal tunnel syndrome, depression, anxiety, agoraphobia, causalgia, complex regional pain syndrome, gastrocnemius equinus contracture, flat foot, and hypertension." *Id.* (internal citations removed). The ALJ explained that, "prior to the date last insured, medical records did not indicate any diagnosis for these impairments" and that the record did not "support diagnoses of the foregoing impairments prior to the date last insured." *Id.* This determination, too, was supported by substantial record evidence.

Plaintiff argues that the ALJ "omit[ed] qualifying diagnosed injuries," Pl.'s Resp. 2, including depression, chronic regional pain syndrome ("CRPS"), and pain in both wrists, Pl.'s Letter 4-5; Pl.'s Mot. 2-3, 13-14, 17-19; Pl.'s Resp. 2, 5-6. I will address each in turn.

Regarding her depression, Plaintiff argues that the ALJ "did not properly assess three physicians diagnosing me with Depression." Pl.'s Mot. 3. For support, she cites to the report of psychiatric consultative examiner Dr. Bangura and the testimony of treating physician Dr. Omohundro. *Id.* Plaintiff claims that Dr. Bangura "reported [she] was depressed for a year (prior to June 30, 2015)." *Id.* Dr. Bangura's examination of Plaintiff was on June 20, 2016, more than two years after her alleged onset date and one year after her date last insured. Tr. 708-11. Dr. Bangura noted that Plaintiff "[was] presently complaining of feeling depressed for about a year," Tr. 709, and diagnosed her with "Major depressive disorder, single episode with anxious distress moderate," Tr. 711. As the Commissioner accurately notes, "there is no indication that Dr. Bangura believed this impairment had existed since June 30, 2015." Def.'s Mot. 5. The ALJ noted that "the evidence of record indicates that the claimant was diagnosed with a mental impairment after the [DLI], but not before." Tr. 19 (citing Dr. Bangura's report, Exhs. 12-13F, and a psychiatric evaluation dated April 20, 2017, Exhs. 20-23F). Plaintiff also cites to Dr. Omohundro's statements that her depression was "causally related to [her] June 6, 2014 injuries," Tr. 733, and that "anyone with chronic pain will have some degree of depression," Pl.'s Mot. Exh. 3.[2] Dr. Omohundro's statements also do not show that

---

[2] This statement is from a one-page excerpt of testimony that Dr. Omohundro's provided on February 28, 2017. Pl.'s Mot. Exh. 3. The Commissioner argues that Dr. Omohundro's statement is new evidence that the Court may not consider. Def.'s Mot. 14. The Court need not address this issue because the doctor's statement does not support a diagnosis of depression during the relevant time.

Plaintiff's depression was a medically determinable impairment during the relevant time period. Plaintiff argues that "[d]epression does not start the day of physician's diagnosis." Pl.'s Resp. 14. This may be true, but an ALJ must rely on objective medical evidence to find an impairment at step two of the sequential process, and there was none here. *See* 20 C.F.R. § 404.1521 (explaining that a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source" and that the SSA "will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment.").

Plaintiff also argues that the ALJ should have found her CRPS to be a severe medically determinable impairment. Pl.'s Mot. 2, 13. For support, Plaintiff cites to "CAT Scan 10/13/2014 Reflex Sympathetic Dystrophy (RSD) same as/other medical term (CRPS) Chronic Regional Pain Syndrome (Causalgia)." *Id.* at 13. The record shows that a scan was performed on October 13, 2014. Tr. 416. The results of the scan indicate "healing fracture of the distal fibula" and "reflex sympathetic dystrophy should be considered." Tr. 416. On October 16, 2014, Dr. Omohundro noted "CT scan left ankle 10-13-14 shows healing oblique fracture lateral malleolus." Tr. 604. Neither of these medical records supports a diagnosis of CRPS, and the ALJ properly determined that it was not a medically determinable impairment based on objective medical evidence during the relevant time period.

Regarding her wrists, Plaintiff argues that the ALJ should have found her wrist pain to be severe. Pl.'s Mot. 4, 13. The ALJ determined that Plaintiff's medically determinable impairment of "left wrist contusion" was not severe because "treatment records indicate that her wrist began to improve in August 2014." Tr. 16 (citing Tr. 767). In response, Plaintiff states: "Although one 2014 doctor notes state wrist improvements. Doctor and I were dealing with about 30 diagnosis, extremely hard to keep up with every day. My wrist injuries are noted multiple times in notes throughout 2014-present. Just informed I need surgery for carpel tunnel syndrome." Pl.'s Mot. 14; *see also* Pl.'s Letter 4 (arguing that the ALJ missed the severe diagnosis of carpal tunnel syndrome in both of her wrists). The Court does not doubt that Plaintiff suffered, and may continue to suffer, from wrist pain. That, however, is not the question presented. The question is whether substantial record evidence supports the ALJ's determination that treatment records showed her wrist began to improve during the relevant time period. It does. The ALJ supportably determined that the record before him showed improvement in Plaintiff's wrist pain during the relevant period. *See, e.g.*, Tr. 767 (noting wrist improvement on August 20, 2014); Tr. 771 (same, October 7, 2014); Tr. 774 (same, October 16, 2014); Tr. 777 (same, October 29, 2014).

Plaintiff's other arguments regarding the severity of her wrist pain are unpersuasive. Plaintiff claims that "both wrist pain difficult to use crutches." Pl.'s Resp. 15. In June and July 2014, Dr. Omohundro noted that Plaintiff experienced bilateral wrist "pain with use and crutches," *see* Tr. 760, 764, but the record establishes that Plaintiff's crutch use was temporary. *See* Tr. 767 (in August 2014, Plaintiff was using a "cam walker and one crutch"); Tr. 774 (in October 2014, Plaintiff was "wearing lacer ankle brace"). Plaintiff also cited to her hearing testimony for support that she suffered from wrist pain. Pl.'s Mot. 13. At the hearing, the ALJ repeatedly clarified that Plaintiff's alleged disability was due to "pain and discomfort in the left lower extremity." Tr. 41; *see also* Tr. 54 (Plaintiff responding "Correct" to the ALJ's question: "[Y]ou seem to be telling me that because of pain and discomfort in the left lower extremity[,] that prevented you from being able to, to work any job?"). After the VE's

testimony, Plaintiff added that her wrists "hurt all the time actually" and that her "bilateral wrist pain in both wrists" was noted in Dr. Omohundro's records. Tr. 65-66. As previously discussed, Dr. Omohundro's notes demonstrate that Plaintiff's wrist pain improved during the relevant time period.

I find that the ALJ followed the correct legal standards and that his step-two findings were supported by substantial record evidence. *See* 20 C.F.R. § 404.1521.

<u>ALJ's step-three finding was supported by substantial evidence</u>

After finding several of Plaintiff's other impairments to be severe, Tr. 32, the ALJ continued with the sequential evaluation. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal Listing 1.02 for major dysfunction of a joint. Tr. 16-17. The ALJ explained that Listing 1.02 requires either the inability to ambulate effectively or the inability to perform fine and gross movements, and properly concluded that the record failed to establish either requirement. *Id*; 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02. Plaintiff argues that she meets Listing 1.02, but she does not point to record evidence that supports a finding of an inability to ambulate or an inability to perform fine and gross movements. *See* Pl.'s Letter at 2 (asserting without more that she meets both requirements and listing injuries). Under Social Security law, the inability to ambulate effectively is "an extreme limitation of the ability to walk" that is "defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00(B)(2)(b)(1). Plaintiff lists many injuries, but she does not allege the inability to ambulate. *See* Pl.'s Resp. 6-7. That Plaintiff "couldn't walk for four months" after the injury, Tr. 38, is not enough to meet Listing 1.02's requirement of inability to ambulate effectively. Similarly, Plaintiff does not show an inability to perform fine and gross movements effectively. Examples of that limitation include "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(d). As the ALJ noted, Plaintiff "prepares her own meals," "leaves her home independently," and "shops for groceries." Tr. 18.

Plaintiff contends that her "Fracture of Tibia-Leg" satisfies Listing 1.06 ("Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones"). Pl.'s Resp. 7. Listing 1.06 requires the inability to ambulate effectively "and return to effective ambulation did not occur or is not expected to occur within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.06. The ALJ did not evaluate Plaintiff's fracture under Listing 1.06. However, the ALJ's RFC discussion of Plaintiff's injuries, which contains detailed citations to the record, demonstrates that the ALJ considered Plaintiff's fracture and that the record lacked support to satisfy the requirements of Listing 1.06. Tr. 17-20; *see Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)); *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (explaining that the "duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments").

ALJ's assessment of Plaintiff's residual functional capacity was supported by substantial evidence

Before moving to step four of the sequential evaluation, the ALJ evaluated Plaintiff's residual functional capacity. A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). When performing an RFC assessment, an ALJ is tasked with considering all relevant evidence, including a claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2; *see also* 20 C.F.R. §§ 404.1529, 404.1545.

Here, the ALJ's RFC discussion summarized the relevant evidence of record: Plaintiff's subjective complaints and testimony, her medical records and medical findings, and the medical opinion evidence, including the opinions of Plaintiff's treating physician. Tr. 17-20. The ALJ's summary of Plaintiff's subjective complaints included her testimony of swelling and nerve damage, that "her doctor recommended that she refrain from working," and that she was "unable to work due to difficulty walking." Tr. 17. The ALJ noted Plaintiff's claims that she "had difficulty with personal care activities such as dressing, bathing, caring for her hair, shaving, and using the toilet," and that "friends help[ed] her with cleaning and laundry." Tr. 18. The ALJ also noted that Plaintiff's activities of daily living were inconsistent with those claims. *Id.* ("she prepares her own meals," "drives," "leaves her home independently," "shops for groceries.") (citing Plaintiff's function report, Tr. 281-88). The ALJ determined that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record." Tr. 17; *see Chater*, 76 F.3d at 594 (explaining the Fourth Circuit's two-part test for evaluating a claimant's subjective complaints).

Plaintiff takes issue with the ALJ's evaluation of her subjective complaints because "[w]hen dealing with more than 10 or 20 injuries on all four limbs, symptoms are [a]lways persistent without yield," and she argues that "[her] symptoms correctly correlate with medical diagnosis [sic]." Pl.'s Mot. 20-21. The ALJ appropriately considered Plaintiff's subjective statements in addition to the entire record to determine her functional capabilities, and his conclusion that Plaintiff's subjective complaints were generally inconsistent with the record was supported by substantial evidence.

In his RFC analysis, the ALJ also discussed Plaintiff's medical records. Tr. 18-19. He noted that Plaintiff sustained multiple injuries at work on June 5, 2014,[3] and that the evidence demonstrated that she experienced steady improvement through her DLI. Tr. 18. The ALJ noted that "[Plaintiff's] physical therapists noted that she made gradual progress in weight bearing and in gait mobility," and that she "used a cam walker, one crutch, and later, a lacer ankle brace." *Id.* The ALJ noted that Plaintiff's "fracture was healed" in December 2014 and, although "her left foot was mildly swollen, [] her range of motion had improved." *Id.* The ALJ noted that, in January and February 2015, physical therapy notes included Plaintiff's reports of "occasional spasms at the sides of her legs," but that Plaintiff "had decreased symptoms with an increased tolerance for activity" and that "her gait pattern

---

[3] The ALJ mistakenly stated that Plaintiff's injury occurred in 2016. Tr. 18.

had improved overall." Tr. 19. The ALJ noted that, in April and June 2015, Plaintiff experienced symptoms "consistent with tibial tendonitis, plantar fasciitis, and Achilles tendonitis," but also that "[s]he had full strength" with normal sensation. *Id.* The ALJ discussed Plaintiff's use of assistive devices "for a period after sustaining her left lower extremity fracture," and found that she "was ambulating with no assistive devices . . . through the [DLI]." *Id.*

The ALJ also assigned weight to the opinions rendered by examining and non-examining medical sources. Tr. 19-20. The ALJ assigned "little weight" to the opinions of the State agency medical consultants, Tr. 79, 92 (opining that Plaintiff could stand or walk up to six hours in an eight-hour workday), because the evidence of record supported greater exertional limitations, Tr. 19. The ALJ assigned "great weight" to the opinions of the State agency psychiatric consultants, Tr. 78, 90 (opining that Plaintiff did not have a severe mental impairment as of the DLI), because they were consistent with the record, Tr. 18. The ALJ also appropriately considered and explained his evaluation of Plaintiff's treating physicians' opinions, assigning "great weight" to the opinions of Physician Assistant Barry Thompson. Tr. 20; *see* Tr. 346 (September 2014 opinion that Plaintiff could walk for one hour, stand for two hours, sit for eight or more hours); Tr. 663 (June 2015 opinion that Plaintiff could perform "light duty" work, only stand or walk for three hours intermittently during an eight-hour workday); Tr. 381 (July 2016 opinion that Plaintiff could perform sedentary work); Tr. 873 (December 2017 opinion that Plaintiff had an unrestricted ability to sit and reach, could stand for two hours, walk for two hours, bend for one hour, and never climb or squat).

Plaintiff challenges the ALJ's assessment of the medical evidence. She first argues that the ALJ erroneously stated that she was not wearing an ankle brace in June 2015. Pl.'s Mot. 1-2, 15; Pl.'s Resp. 11. The ALJ cited to the record for his finding that "[i]n April 2015, the claimant was ambulating with no assistive devices, and this continued through the [DLI]." Tr. 19 (citing Tr. 842 ("ambulating with no assistive devices") and Tr. 845 (same)). Even if Plaintiff had used an assistive device in April or June 2015, the RFC's limitation to sedentary work would be supported by substantial evidence. Plaintiff has not identified how the use of an ankle brace would change the result in her case. *See, e.g.,* Tr. 64 (VE testimony that the use of a cane or crutches for walking would not have an impact on the identified sedentary jobs).

Plaintiff next argues that the ALJ disregarded "[q]ualifying medical evidence," Pl.'s Mot. 17-18, and that the "ALJ did not properly adjudicate . . . the significance of the [] missing eleven (11) medicals diagnosed all prior to June 30, 2015," *id.* at 19; Pl.'s Resp. 9 ("ALJ inappropriately left out" CRPS, stage II tibia posterior tendinitis, plantar fasciitis, osteopenia, depression, anxiety, agoraphobia, and wrist injuries). As a threshold matter, an ALJ is not required to discuss every piece of evidence in the record. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Regarding the "inappropriately left out" diagnoses, the ALJ's step-two analysis, as discussed above, was supported by substantial evidence. Therefore, Plaintiff's argument that the ALJ "did not weigh all impairments along with Major Depression Disorder and Anxiety," Pl.'s Resp. 12, cannot stand because the ALJ properly found that Plaintiff's depression and anxiety were not medically determinable impairments during the relevant time frame. As this Court has said, "[i]t is unfortunately possible for a disability applicant's health to decline precipitously after the date of last insured, even to the point that such individual could be considered 'disabled.' However, that difficult circumstance does not change the validity of

a determination of nondisability on or before the DLI." *Stahl v. Comm'r of Soc. Sec.*, No. JKB-09-1884, 2010 WL 1375438, at *3 (D. Md. March 26, 2010).

Last, Plaintiff argues that her doctors' medical records "prove" that her impairments "did not steadily improve through [her DLI]." Pl.'s Resp. 10. Plaintiff argues that Dr. Omohundro's August 2014 note that Plaintiff should perform "no work"[4] is "clear evidence of being placed medically disabled [sic]." Pl.'s Mot. 6. As the ALJ correctly explained, "the issue of disability or inability to work is reserved to the Commissioner." Tr. 20; 20 C.F.R. § 404.1527(d)(1). Furthermore, two weeks after Dr. Omohundro's "no work" opinion, Dr. Thompson, another doctor in the same practice, opined that Plaintiff could perform work with limitations. *See* Tr. 346. Plaintiff refers to her impairments as "Life-Long Deteriorating Injuries," but also describes spending "4+ months in cast/crutches, having to be taught how to walk all over again like a toddler." Pl.'s Resp. 10. The ALJ did not dispute that Plaintiff's injuries interfered with her ability to walk for a period of time. *See, e.g.*, Tr. 19-20 ("[T]he claimant's gait was significantly restricted after her fracture. She was unable to bear weight on her [] lower extremity for a brief period."). As Plaintiff's argument acknowledges, however, she was able to walk again. *See* Pl.'s Resp. 10. Despite Plaintiff's belief that "[a]ll proven facts are far from signs of improving," *id.*, the ALJ's finding that the record demonstrated improvement is supported by substantial evidence.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find that the ALJ supported his RFC determination with substantial evidence.

ALJ's findings at steps four and five were supported by substantial evidence

At steps four and five, the ALJ, relying on the vocational expert's ("VE's") testimony, determined that Plaintiff was unable to perform her past relevant work. Tr. 20. However, in accordance with the VE's testimony, the ALJ determined that a person with Plaintiff's RFC could perform a restricted range of sedentary jobs existing in significant numbers in the national economy, including order clerk, addresser, and document preparer. Tr. 22-23.

Plaintiff challenges the ALJ's failure to consider her disabled in light of the "loss of TWO (2) prior job experiences (2- Sales and Real Estate)." Pl.'s Resp. 15 (emphasis in original). Plaintiff acknowledges that she has "work restrictions" as a result of her injuries but insists that she should receive disability benefits because she is unemployed. Pl.'s Mot. 5 ("Unemployed with Life-Long injuries and Life-Long work restrictions."). As the ALJ explained at the hearing, the applicable law

---

[4] Plaintiff attached this record to her motion for summary judgment, calling it a "missing exhibit." Pl.'s Mot. 6 & Exh. 1. However, Dr. Omohundro's note was included in the record, Tr. 857, mentioned at the hearing, Tr. 39, 68, and acknowledged in the ALJ's decision, Tr. 17.

and regulations focus on whether the claimant is able to work at all, not whether the claimant is unable to perform her past work or continue her career:

> ALJ: It only matters how you're limited and whether those limitations would preclude you from any work whatsoever regardless of how menial it was.
> Clmt: So it doesn't matter if I was a realtor before and I can't show the amount of homes that I should have done?
> ALJ: It doesn't matter . . . If I got injured tomorrow and couldn't be a judge . . . if they find that I can be a telemarketer at minimum wage - - if I'm capable of doing that - - I'm not disabled for Social Security purposes. It doesn't matter how well you were doing or how responsible . . . It only matters - - is there any work of any kid or of any nature whatsoever out there that exists in significant numbers that you could still do?

Tr. 51-52; *see also* SSR 96-8p ("It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairments(s) and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work.").

Plaintiff further challenges the ALJ's step-five finding based on the ALJ's failure to include some of the VE's testimony in the final decision. Pl.'s Letter 1; Pl.'s Mot. 7, 13, 16, 17; Pl.'s Resp. 16. Plaintiff mentioned her wrist pain during the VE's testimony and the ALJ presented a hypothetical to the VE that included limitations to accommodate wrist pain. Tr. 67. In response, the VE testified that, of the sedentary jobs identified, the position of surveillance system monitor could still be performed.[5] *Id.* The VE testified that there are approximately 20,000 surveillance system monitor positions nationwide. Tr. 63. Plaintiff argues that 20,000 nationwide positions is not a substantial number and that she should, therefore, be found disabled. Pl.'s Resp. 16 ("being disabled we need to be near family, friends, doctors . . . locally to help us"). An ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (per curiam) (table decision). "[B]ased on his or her evaluation of the evidence, an ALJ is free to accept or reject restrictions included in hypothetical questions." *France v. Apfel*, 87 F. Supp.2d 484, 490 (D. Md. 2000). Therefore, the ALJ was not required to adopt the restrictions included in the hypothetical that addressed Plaintiff's alleged wrist pain. As previously discussed, the ALJ's determination that Plaintiff's wrist pain did not result in work-related limitations was supported by substantial evidence. His decision to not incorporate the hypothetical addressing wrist pain was, therefore, permissible. Furthermore, even if the ALJ had adopted the wrist pain

---

[5] The position of surveillance system monitor is not one of the three step-five representative occupations in the ALJ's decision. *See* Tr. 21-22. It was proffered for a more restrictive RFC than the ALJ ultimately decided upon which included limitations to "performing simple one to four step routine, repetitive tasks in a low stress work environment defined as requiring only occasional decision-making and occasional changes in the work setting; where there would only be occasional contact with co-workers, supervisors, and the general public; and which would not require a fast pace or production quotas such as would customarily be found on an assembly line." Tr. 62-63.

limitation, 20,000 represents a significant number of jobs. 42 U.S.C. § 423(d)(2)(A) (explaining that a claimant is not disabled if she is able to engage in "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country."); *see Lawler v. Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that where only 75-100 jobs existed in the region where plaintiff lived did "not undermine the ALJ's conclusion that plaintiff [was] capable of performing work that exists in significant numbers in the national economy.") (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number)).

ALJ properly considered Plaintiff's age

Plaintiff also argues that the ALJ did not properly consider her age. As the Commissioner explains, "[t]he regulations provide that an adjudicator will not apply the agency's age categories mechanically in a 'borderline' situation." Def.'s Mot. 16 (citing 20 C.F.R. § 404.1563(b)). Plaintiff cites to subsections (c) and (d) of the same regulation to argue that the ALJ erred by not considering her borderline age. Pl.'s Mot. 3; Pl.'s Resp. 2. Those subsections state:

> (c) Younger person. If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2 of subpart P of part 404 of this chapter.
>
> (d) Person closely approaching advanced age. If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

20 C.F.R. § 404.1563(c)-(d). Plaintiff was forty-six years old on her alleged onset date and forty-seven years old on her DLI. Tr. 146. Therefore, Plaintiff was a "younger person" at all relevant times, and subsection (d) does not apply in her case. Subsection (c) explains that "in some circumstances," a person with the Plaintiff's age may be considered "more limited in their ability to adjust to other work." Here, the ALJ correctly identified Plaintiff's age. Tr. 21; *see also* Tr. 57 (ALJ asking the VE "to assume someone who is between the ages of 46 and 50"). The ALJ did not find any circumstances in Plaintiff's case that warranted considering her to be "more limited in [her] ability to adjust to other work," 20 C.F.R. § 404.1563(c), and Plaintiff does not identify any such circumstances.

ALJ did not err by finding Plaintiff waived her right to representation

Lastly, Plaintiff challenges the ALJ's conclusion that she "chose to appear and testify without the assistance of [an attorney or] other representative." Pl.'s Mot. 2 (quoting Tr. 13). She states that her father "attended to speak/testify on [her] behalf" and that she "pleaded for him to come in" but that "[h]e was not allowed to testify." *Id.* at 12. In her reply, Plaintiff writes that she "unfortunately had to waive rights to representation because [she] searched for an attorney and could not find one." Pl.'s Resp. 17. The record is clear that Plaintiff was advised of her right to representation. *See* Tr. 99 (SSA notice of disapproved claim, including a section titled "If You Want Help With Your Appeal");

103-05 (SSA's notice of reconsideration, showing "Enclosure: SSA Pub. No. 70-10281," ("Your Right to an [ALJ] Hearing and Appeals Council Review of Your Social Security Case," which includes information on representation); 107 (Plaintiff's request for a hearing by an ALJ, "I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative"), 110-11 (SSA letter regarding upcoming ALJ hearing and describing a claimant's right to representation), 125-30 (SSA notice of hearing, showing enclosure of "SSA Publication No. 05-10075 (Your Right To Representation)"); *see also* Def.'s Mot., Exh. 1 (SSA Pub. No. 70-10281). At the hearing, the ALJ explained that Plaintiff was "entitled to have the assistance of a representative" and that "if [she] met certain income and resource guidelines, it's possible [she] might qualify to have a free representative." Tr. 33-34. The ALJ asked Plaintiff whether she would like additional time to obtain a representative, and Plaintiff replied, "I'm fine with going ahead - - proceeding." Tr. 35. Therefore, the ALJ properly found that there was "a knowing waiver of the right to representation." *Id.*

Plaintiff claims that she was not allowed to have her father testify on her behalf. Pl.'s Mot. 12. There is no record support for this claim. The transcript shows that Plaintiff did not ask for her father to testify. During the hearing, the ALJ asked Plaintiff: "is there anything that you can think of that we haven't covered thus far that you would want to tell me?," Tr. 65, and "anything further you can think of?," Tr. 68. In response to those questions, Plaintiff did not request that her father testify. Rather, the transcript shows that she stated, "Like I said dad doesn't need to come in." Tr. 72. Plaintiff disputes the accuracy of the transcript, arguing "why would I make that awkward statement?" because it "[s]eems this question would follow a prior question." Pl.'s Mot. 12; Pl.'s Resp. 18-19. The statement came near the end of the hearing. After the VE's testimony, the ALJ asked Plaintiff, "anything further that you can think of?" Tr. 68. Plaintiff summarized her experience. Tr. 68-71. At the end of Plaintiff's summary, she references her father but does not ask for him to testify:

> Clmt: . . . I, I lost everything. You know that I'm hanging onto my house. I mean - - my dad's helping me with the bills thank god. But - - and I just got them around to that. Because he's like get out there. And I'm like - - dad, it's not normal. You know and so. Yeah.
> ALJ: All right. Well thank you very much.
> Clmt: Oh, appreciate your time, your honor.
> ALJ: And there being nothing further at this time the hearing and the record are both closed. Thank you very much, ma'am.
> Clmt: Like I said dad doesn't need to come in.
> ALJ: Pardon?
> Clmt: My father doesn't need to come in, your honor.
> ALJ: I just really - - no, because of the remoteness of the time.
> Clmt: Okay.
> ALJ: You know you've given me a pretty clear [] picture of what I need to look for when I go back through the evidence.
> Clmt: Okay. All right.
> ALJ: All right. Thank you.
> Clmt: Thank you. I appreciate your help, your honor and your time.

Tr. 71-72. Plaintiff asserts that she "pleaded for him to come in," Pl.'s Mot. 2, 16, but the record does not support her claim. The transcript of the hearing reflects that she never asked for her father to testify. The Court has no reason to doubt the accuracy of the hearing transcript.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 20, is DENIED. Defendant's Motion for Summary Judgment, ECF No. 21, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge